IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

              Plaintiff,

  v.

RITA WITTER,

              Defendant.

OPINION and ORDER

18-cr-77-wmc-4

---

On January 3, 2019, defendant Rita Witter was convicted of conspiracy to distribute methamphetamine, and the court sentenced her to 36 months in prison. Witter has served approximately 15 months of her sentence, and is currently imprisoned at the Federal Medical Center in Fort Worth, Texas ("FMC Carswell"). Under the compassionate release provision, 18 U.S.C. § 3582(c)(1)(A), Witter now seeks a reduction of her sentence of imprisonment to time-served, to be followed by three years of supervised release, on the ground that her myriad health conditions render her uniquely at risk of death should she become infected with COVID-19. (Dkt. #174.) The court set this matter for accelerated briefing and directed the U.S. Probation Office to conduct a pre-release investigation and submit a letter of findings to the court, parties, and the Bureau of Prisons ("BOP"). The court received that letter on April 22, 2020, the same day that the government opposed the motion as premature, since it is undisputed that Witter had not begun the process of exhausting her administrative remedies, to which the defendant's counsel replied yesterday, April 23. Finally, the court held a telephonic hearing on Witter's motion today, April 24, 2020. For the reasons that follow, the court will hold an evidentiary hearing on Witter's motion by video conference

on Wednesday, April 29, 2019, at 2:00 p.m., and authorizes accelerated discovery regarding Ms. Witter's current medical condition and treatment at FMC Carswell, including issuance of a subpoena for Ms. Witter's medical provider qualified to give testimony on her medical condition, treatment and risk of exposure to the coronavirus and of contracting COVID-19.

RELEVANT BACKGROUND

A. Witter's Health Condition and Placement at FMC Carswell

Witter is 70 years old. At the time of sentencing, Witter had stage 4 kidney failure, combined systolic and diastolic congestive heart failure, COPD, and atrial fibrillation requiring anticoagulation. Her health conditions prompted her placement at FMC Carswell. Since her incarceration, Witter has also been diagnosed with lung cancer (specifically "Stage IV invasive squamous cell carcinera of [the] left lung"), and she underwent her first round of chemotherapy in March. She takes numerous medications to address these issues. Additionally, because she is in constant pain, she requires a fentanyl patch. Her release date is December 16, 2020, and she is eligible for a halfway house in two months.

Defense counsel also submitted a letter from Dr. Barbara Benjamin, dated April 16, 2020. After reviewing Witter's medical records, Dr. Benjamin opines that Witter is highly susceptible to death if she becomes infected with COVID-19. Dr. Benjamin has not examined Witter, nor does her letter suggest that she ever treated Witter in the past.

Until yesterday, Witter does not appear to have petitioned the warden at FMC

Carswell for a reduction in sentence or home confinement, although defendant's counsel provides notes from Witter's meetings with a prison social worker, during which they discussed the option of compassionate release. A March 26 note further shows a plan to wait for an update from Witter's oncologist; an April 3 note shows that Witter's primary care physician was working on Witter's medical summary; and at that time, plans were in the works for a discussion with the Nursing Care Center physician about Witter's eligibility for a reduction in sentence or for release in light of COVID-19. An April 7 note further shows that her physician was still working on Witter's medical summary, and that the Nursing Care Center physician planned to advise whether Witter would be considered for a reduction in sentence because her prognosis was "pending." Despite a request to the BOP for informal participation by one of Witter's medical care providers, the court has no current information about Witter's prognosis, although given her age and complicated health history, the court will assume for purposes of this hearing that it is one year or less. The court also accepts Dr. Benjamin's conclusion that Witter is at a "severely high risk of death" should she contract COVID-19.

### B. U.S. Probation Office's Recommendation

Witter requests to reside in Flagler, Colorado, with her domestic partner, David O'Dean. The residence is a two-bedroom, one-bathroom home. Flagler is a community of approximately 500 residents located 120 miles from Denver, Colorado. Probation indicates that O'Dean is willing to drive to FMC Carswell, in Texas, to pick up Witter and transport her back to Flagler. Witter intends to resume her Medicare benefits and

seek medical treatment with her former physician in Colorado if she is released.

While the U.S. Probation Office does not formally oppose the proposed release plan, the probation office in Colorado has the following concerns: Witter's methamphetamine use while on pretrial supervision, even despite her medical problems (*see* Revised PSR (dkt. #12) ¶ 152); the lack of practically available treatment services for Witter's various conditions; O'Dean's domestic violence history, which includes Witter as an alleged victim; and O'Dean is Witter's only support in Colorado. Finally, the residence is an approximate two-hour drive from the probation office. To this list, the court notes that Witter was living with O'Dean during the commission of her federal offense, and they share a co-dependence on methamphetamine.

### C. BOP's Response to COVID-19

Although somewhat tone deaf given the undisputed severity of the defendant's medical condition and the lack of specific information regarding the conditions at FMC Carswell, the government provides details about the measures the BOP has taken to curb the spread of COVID-19. Specifically, the on March13, 2020, the BOP modified its operations in accordance with a Coronavirus (COVID-19) Action Plan ("Action Plan"), to minimize the risk of COVID-19 transmission into and within its facilities. The government further notes that the BOP has repeatedly revised the Action Plan to address the crisis. Specifically, on April 1, 2020, the BOP implemented Phase Five of the Action plan, which currently governs its operations. Phase Five requires all prisoners in every BOP institution to be secured in their assigned cells or quarters for a period of at least 14

4

days; allows only limited group gatherings to continue access to commissary, laundry, shower, telephone and computer access; severely limits prisoner movement among its facilities; and cancelled staff travel and most staff training. Additionally, the government represents that all staff and prisoners have been issued face masks and have encouraged face covering when in public areas where social distancing is not possible. The government also provides details about how prisoners and staff are screened and isolated if they are experiencing any symptoms.

Furthermore, the government explains that the BOP is exercising greater authority to designate prisoners for home confinement. On March 26, 2020, the Attorney General directed the BOP's Director to prioritize the use of statutory authority to place prisoners in home confinement. In particular, pursuant to 18 U.S.C. § 3624(c)(2), the BOP has the authority to place a prisoner in home confinement during the last six months, or 10%, of his or her sentence; and under 34 U.S.C. § 60541(g), the BOP is authorized to move elderly and terminally ill prisoners to home confinement.

The Coronavirus Aid, Relief and Economic Security Act ("CARES"), enacted on March 27, 2020, further authorizes the BOP to increase the "maximum amount of time" that the BOP Director may place a prisoner in home confinement, if the Attorney General concludes the emergency conditions will materially affect the functioning of the BOP. Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note). On April 3, 2020, the Attorney General authorized the BOP Director to exercise that discretion, and the BOP has transferred 1280 prisoners to home confinement as of April 22, 2020.

Relevant to Witter's motion, the BOP's website shows that as of April 23, 2020, FMC Carswell has had two prisoners who have tested positive for COVID-19.  *See* https://www.bop.gov/coronavirus/index.jsp (last visited Apr. 24, 2020).  The government has not provided details about the proximity of these two prisoners to Witter at FMC Carswell, the medical facility, nor whether she may share health care providers or staff with either of these prisoners or others who have been exposed to them.

OPINION

The parties' briefing focuses in large part on whether this court may excuse Witter's undisputed failure to exhaust her administrative remedies within the BOP, and so the court will briefly address the parties' arguments related to exhaustion.  Since the government's view is that Witter's motion is not ripe for review, the government has not addressed the merits of the motion.  However, the court's pivotal concern about reducing Witter's sentence to time served is her ability to obtain health care and avoid drug use, as well as her likely exposure to the coronavirus if released, as compared to the efficacy of her continued treatment and exposure at FMC Carswell.

**I.   Exhaustion**

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify a term of imprisonment as follows:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may

> impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The BOP has not filed a motion for Witter's release under this statute. Defense counsel indicates that despite calls, emails and letters sent to Witter, he was unable to actually communicate with Witter herself about why she did not submit a request for compassionate release with the warden, or why her social worker has not submitted one on her behalf, but it appears this was finally accomplished yesterday. Regardless, Witter's position is that the exhaustion requirement set forth in § 3582(c)(1)(A) is non-jurisdictional and subject to exception. The court accepts her first argument, but reserves as to her second.

### A. Exhaustion is non-jurisdictional

Exhaustion requirements can be either jurisdiction or a claims-processing rule. *Bowles v. Russel*, 551 U.S. 205, 211-12 (2007) (noting "the jurisdictional distinction between court-promulgated rules and limits enacted by Congress"); *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019) ("The Court has therefore stressed the distinction between jurisdictional prescriptions and non-jurisdictional claim-processing rules, which seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times."). Jurisdictional requirements cannot be

7

waived or excused, but claim-processing rules can be. *Gonzales v. Thaler*, 565 U.S. 134, 142 (2012) ("Subject matter jurisdiction can never be waived or forfeited."); *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 (2017) ("Mandatory claim-processing rules are less stern.").

The Court of Appeals for the Seventh Circuit has not addressed whether the exhaustion requirement in § 3582(c)(1)(A) is jurisdictional, but the court has concluded that other exhaustion requirements within § 3582(c) are non-jurisdictional. Specifically, in *United States v. Taylor*, 778 F.3d 667 (7th Cir. 2015), the Seventh Circuit concluded that § 3582(c)(2)'s statutory criteria create a "'non-jurisdictional case processing rule' that does not deny district court's subject matter jurisdiction." *Id.* at 669. In reaching that finding, the court recognized that "[w]hether a limit on a court's power is truly jurisdictional is ultimately up to Congress." *Id.* at 670. The "general rule that has emerged is that 'when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.'" *Id.* at 670-71 (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006). The court concluded that § 3582(c)(2)'s exhaustion requirement was not jurisdictional because (1) 3582 is not a part of a jurisdictional portion of the criminal code, and (2) the statute is not phrased in jurisdictional terms. *Id.* at 671.

Witter urges the court to apply the reasoning in *Taylor* to § 3582(c)(1)'s exhaustion requirement, and that argument is well-taken. Indeed, the government accepts the Seventh Circuit's reasoning from *Taylor*, while maintaining that the plain language and purpose of § 3582(c) -- that a "court may not modify" a term of imprisonment except in

8

numerated circumstances -- signal that the exhaustion requirement is jurisdictional. However, the government makes no effort to actually distinguish § 3582(c)(1)(A) from § 3582(c)(2). As such, the court concludes that the rationale of *Taylor* applies to the exhaustion requirement of § 3582(c)(1)(A) as well and, thus, that the exhaustion requirement is not jurisdictional. *See United States v. Cox*, 4:18-cr-17-TWP-VTW, 2020 WL 1923220, at *2 (S.D. Ind. Apr. 21, 2020) (noting that the government conceded that the § 3582(c)(1)(A) exhaustion requirement is non-jurisdiction, and, in any event, the reasoning in *Taylor* applied); *United States v. Haney*, No. 19-cr-541 (JSR), 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (citing to *Taylor* to conclude the same).

    **B.** The Court's Authority to Excuse the Failure to Exhaust Based on Futility

Although § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, the government maintains that this court lacks the authority to ignore the exhaustion requirement over its objection. However, "[e]ven where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) (affirming application of judge-made exhaustion requirement). Rather, in circumstances where the exhaustion requirement is imposed by *statute*, as opposed to case law, "Congressional intent is 'paramount' to any determination of whether exhaustion is mandatory." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992); *Ross v. Blake*, 136 S. Ct. 1850, 1854-56 (2016) (noting that "when it comes to statutory exhaustion provisions, courts have a role in creating exceptions only if Congress wants them to," and concluding that there is to futility exception no the Prison Litigation

9

Reform Act's exhaustion requirement). Generally, Congress imposes exhaustion requirements to "serve the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Id.*

Since § 3582(c)(1)(A) amounts to an exception to the fundamental rule that courts may not revisit a final criminal judgment, the government's position is that the exhaustion requirement within the statute is a mandatory claim-processing rule, and the requirement must be enforced if properly raised. *See Henderson v. Shinseki*, 562 U.S. 428, 435 (2011) (claim-processing rules may still be "important and mandatory"); *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curium); *United States v. Rollins*, 607 F.3d 500, 501 (7th Cir. 2010) (since the claim-processing rule making the time limit for filing criminal appeals is mandatory, it must be enforced when the appellee asserts the limit as a defense).

Although the majority of courts addressing this question have agreed with the government's position, the Seventh Circuit has not yet spoken, and this court is more persuaded by the authority suggesting that in very limited circumstances, equitable exceptions may apply. To start, on April 2, 2020, the Court of Appeals for the Third Circuit held that, in circumstances in which 30 days had not passed after a prisoner's request was presented to the warden, the statute "presents a glaring roadblock foreclosing compassionate release at this point." *United States v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020). The court concluded that "strict compliance with § 3592(c)(1)(A)'s exhaustion requires takes on added -- and critical -- importance"). The government points out that the vast majority of district courts to address this question

10

agree with the reasoning from *Raia*. *See United States v. Epstein*, 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020) (collecting cases). This includes courts within the Seventh Circuit.[1]

That said, in recent weeks, a growing number of district courts have concluded that the exhaustion requirement may be waived. *See United States v. Russo*, 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020); *United States v. Smith*, 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020); *United States v. Colvin*, 2020 WL 1613943 (D. Conn. Apr. 2, 2020); *United States v. McCarthy*, 2020 WL 1698732 (D. Conn. Apr. 8, 2020); *United States v. Ben-Yhwh*, 2020 WL 1874125 (D. Haw. Apr. 13, 2020); *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020); *United States v. Zukerman*, 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020); *United States v. Paciullo*, 2020 WL 1862252, at *2 (S.D.N.Y. Apr. 14, 2020) (court strikes a "compromise" and allows BOP 20 days).

In particular, Witter directs the court to the line of reasoning from *Haney*, in which the Southern District of New York held that one cannot reasonably infer from the language of the statute that Congress "intended the 30-day waiting period of §

---

[1] In *United States v. Fevold*, No. 19-CR-150, 2020 WL 1703846, at *1 (E.D. Wis. Apr. 8, 2020), Judge Griesbach cited to *Raia* in denying an unexhausted motion for compassionate release, although he did not explicitly determine whether exhaustion was a jurisdictional requirement, but rather reasoned that: "exhaustion of administrative remedies [is] required, but it also makes good policy sense. The warden and those in charge of inmate health and safety are in a far better position than the sentencing court to know the risks inmates in their custody are facing and the facility's ability to mitigate those risks and provide for the care and safety of the inmates." *Id.* In *United States v. Henricks*, No. 13-cr-83, dkt. #252 (W.D. Wis. Apr. 15, 2020), Judge Crabb similarly denied a request for compassionate release on the basis that the starting point with these requests must be with the BOP, without specifically addressing the defendant's futility argument. The Southern District of Indiana has reached the same conclusion. *See United States v. Carter*, No. 1:18-cr-96-JMS-DML, 2020 WL 1808288, at *2 (S.D. Ind. Apr. 9, 2020) (concluding, without examining in detail, that the defendant had not shown that the court "has the power to waive the administrative exhaustion requirement"); *United States v. Albertson*, No. 1:16-cr-250-TWP-MJD, 2020 WL 1815853, at *2 (S.D. Ind. Apr. 8, 2020) (same). None of the facts of those cases, however, involve health conditions as extreme as Ms. Witter's.

3582(c)(1)(A) to rigidly apply in the highly unusual situation in which the nation finds itself today." 2020 WL 1821988, at *3. The court distinguished the exhaustion requirement of § 3582(c)(1)(A) from exhaustion in the "traditional" sense because the statute's 30-day waiting period does not require the moving defendant to litigate fully the request at every step in the agency before petitioning the court. Thus, the court reasoned,

> [t]hat the statute gives the defendant this choice is crucial to understanding Congress's intent. Generally, Congress imposes exhaustion requirements in order to "serve[] the twin purpose of protecting administrative agency authority and promoting judicial efficiency." *McCarthy*, 503 U.S. at 145. But the hybrid requirement in this statute -- either exhaust or wait 30 days -- substantially reduces the importance of the first purpose, as it allows a defendant to come to the court before the agency has rendered a final decision. Indeed, anyone familiar with the multiple demands that the BOP has faced for many years in this era of mass incarceration can reasonably infer that Congress recognized that there would be many cases where the BOP either could not act within 30 days on such a request or, even if it did act, its review would be superficial.
> . . .
> Thus, the reduction of the wait period to a mere 30 days also "unquestionably reflects" a third purpose, *i.e.*, "congressional intent for the defendant to have the right to a meaningful and prompt *judicial* determination of whether he should be released." *United States v. Russo*, No. 16-cr-441 (LJL), ECF No. 54, at 4 (S.D.N.Y. Apr. 3, 2020).

*Id.* Accordingly, the court determined that it had discretion to waive the exhaustion requirement if the 30-day waiting period could not serve the congressional objective of ensuring prisoners receive a meaningful and prompt opportunity for a judicial determination on the motion.

The government has not responded to this line of reasoning from *Haney*, and several courts since have relied on that analysis to conclude that § 3582(c)(1)(A)'s exhaustion requirement is subject to exceptions. *See, e.g., United States v. Bess*, 2020 WL

1940809, at *7 (W.D.N.Y. Apr. 22, 2020); *United States v. Ramon-Sanches*, 2020 WL 1933815, at *5 (D. Conn. Apr. 22, 2020); *United States v. Atwi*, 2020 WL 1910152, at *3 (E.D. Mich. Apr. 20, 2020); *United States v. Scparta*, 2020 1910481, at *6 (S.D.N.Y. Apr. 20, 2020).

Although in *Haney* the court did not explicitly examine legislative authority suggesting that Congress intended courts to modify the 30-day waiting period to ensure the availability of judicial intervention, in *Scparta*, the Southern District of New York found support for this conclusion within the First Step Act's legislative history, noting in particular the intent that the Act "enhance public safety" and made "changes to Bureau of Prisons' policies and procedures to ensure prisoner and guard safety and security." *Id.* at *7 (quoting H.P. Rep. 115-699, at 22). The court determined that "strictly construing the exhaustion requirement and not admitting equitable exceptions in these circumstances achieves precisely the opposite result," putting prisoners, guards, staff and the public all at risk. *Id.* Although the government would refer the court to the decisions finding otherwise, the government has not directed the court to a circumstance in which a prisoner, like Witter, is arguably so uniquely vulnerable that dying as a result of exposure to COVID-19 is a near certainty.[2] While emphasizing the very narrow window available

---

[2] For this reason, the court respectfully disagrees with the April 21, 2020, decision in *United States v. Cox*, 2020 WL 1923220, at *2 (S.D. Ind. Apr. 21, 2020). The court denied a motion for compassionate release on exhaustion grounds brought by a 66-year-old prisoner with various heart conditions, finding:

> The language of the statute is plain, and it includes no hint of the exceptions Mr. Cox urges the Court to adopt in his case -- which amount to generalized exceptions for the exigent circumstances created by the COVID-19 pandemic. Mr. Cox also has not pointed the Court to any legislative history suggesting Congress's intent to allow for

to Witter, especially absent any meaningful excuse for requesting administrative relief from the warden sooner, the court accepts that the futility argument is available to her.

### C. Futility Exception

Witter's position is that she is excused from the exhaustion requirement because it would be futile to pursue it, the BOP's administrative process would be incapable of granting relief and Witter would be unduly prejudiced by pursuing her request through the BOP. *See Orr v. Assurant Employee Benefits*, 786 F.3d 596, 602 (7th Cir. 2015). Witter's argument is straightforward: her health condition renders her uniquely vulnerable to death should she become infected with COVID-19; the absence of

---

exceptions. Moreover, the case for creating new exceptions is particularly weak with respect to § 3582(c)(1)(A) because "the statute itself includes a limited futility-like exception, as it allows an inmate to seek relief 'after . . . the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility.'" *Roberts*, 2020 WL 1700032, at *2 (quoting 18 U.S.C. § 3582(c)(1)(A)); *see also United States v. Gross*, No. 15-cr-769 (AJN), 2020 WL 1862251, at *2 (S.D.N.Y. Apr. 14, 2020) (same).

*Id.* at *3. In particular, the court disagrees with the analysis from *Haney* that the 30-day waiting period indicated congressional intent for leniency:

> Congress adopted a provision that allowed only one exception to fully exhausting administrative remedies -- the situation in which a defendant files a request with his warden but receives no response for 30 days. In the face of this plain language, the Court cannot infer that Congress really meant to allow for a shorter filing time in the face of sufficiently exigent circumstances.

*Id.* at *4.

widespread testing has resulted in the inability to curb the spread throughout the country and within various institutions; and the BOP's record of handling requests for compassionate release do not suggest that the turnaround will be prompt.

In opposition, the government argues that exhaustion would not be futile in Witter's circumstances because it "often" concurs with the request, and indeed has consented to a reduction in sentence in 55 cases. Moreover, the government represents that the BOP is in a position to respond to Witter's request for compassionate release promptly. In support, the government cites to BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. § 3582(c)(1)(A) and 4205(g), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited Apr. 23, 2020). These procedures are extensive, and the government represents that the BOP thus completes a diligent and thorough review of all requests, applying its considerable expertise related to both the prisoner and the conditions of confinement. The government further points out that during this crisis the BOP's expertise is critical, and it is in the best position to resolve these requests as well as to strike the correct balance of maintaining prisoner health and the safety of the public.[3]

---

[3] The government further distinguishes the decisions from at least two courts finding that exhaustion would be futile, since the prisoner's sentence was almost complete. *United States v. Colvin*, 2020 WL 1613943, at *1 (D. Conn. Apr. 2, 2020) (exhaustion futile because prisoner had 11 days left on her sentence); *United States v. Perez*, 2020 WL 1546422, at *1 (S.D.N.Y. Apr. 1, 2020) (finding exhaustion futile because prisoner had 21 days left on his sentence and was recovering from two beatings). The government notes that the *Perez* decision improperly relied on precedent involving a judicially-created exhaustion requirement, not a statutory exhaustion requirement. *Id.* at *2 (relying on *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The court accepts the distinction but is not persuaded that this distinction bears on whether Witter's request for compassionate relief would be futile.

The government's point is well-taken, but it has made no effort to respond to defendant's arguments related to: (1) the BOP's delays in resolving these requests, when time is a precious resource in avoiding exposure to COVID-19, and (2) Witter's unique circumstances, which render her vulnerable to death if she becomes infected. Admittedly, the information before the court does not provide clear guidance about the risk that *Witter* specifically is facing in her current conditions of confinement, much less upon release. However, defendant's point related to how little testing is being done, and how quickly an institution can become a hotspot, has merit. Given Witter's serious health conditions and the likelihood of substantially greater risk of death should she contract COVID-19, the court is unable to find on this record that exhaustion might not be futile.

## II.   Merits

Assuming the court can reach the merits of Witter's motion, the court is not persuaded, on this record, that Witter's request is supported by extraordinary and compelling reasons. As an initial matter, § 3581(c)(1)(A) does not define "extraordinary and compelling reasons." However, the applicable policy statement issued by the Sentencing Commission lists a series of four circumstances that qualify as "extraordinary and compelling. " Those circumstances include:

> (1) The defendant's medical condition is such that he suffers from a "terminal illness" or the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. "
>
> (2) "The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental

    health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."

  (3) The defendant's family circumstances include either "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children" or "(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."

  (4) A catch-all provision that allows the director of the Bureau of Prisons to determine that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in [the above subdivisions]."

U. S. S. G. 1B1. 13 cmt. n. 1.

  Based on Witter's submissions alone, the court is not inclined to reduce her sentence to time served because the proposed release plan does not establish that Witter will fare better outside of the institutional setting. The court has little to no details about how Witter will be able to address her health issues and undergo chemotherapy while living in Colorado, much less manage O'Dean's and her longstanding use of methamphetamine. The only information about a plan for her treatment is that Witter intends to resume her medical care with her previous physician. Presumably O'Dean will drive her to obtain medical care, but the court has no insight into the likelihood of a continuity of care, particularly as to her ongoing chemotherapy, or how far she will have to travel to receive regular care or obtain emergency care, or her potential exposure to the coronavirus or someone with COVID-19 as part of that medical care.

  As noted, the release plan does not address Witter's ability to avoid drug use. This

in particular is a problem, given that Witter tested positive for methamphetamine during her period of pretrial release; indeed, the court weighed heavily Witter's apparent inability to avoid drug use in declining to sentence her to a term of supervised release in 2019.  (Statement of Reasons (dkt. #132) 5.)  As also noted, O'Dean has a history of methamphetamine use, as well, acknowledging to probation in 2019 that Witter and he used methamphetamine for a long time together.  (Revised PSR (dkt. #123) ¶ 133.) Although in 2019 O'Dean represented that he had not used methamphetamine for approximately three years because it he could no longer afford it, probation has been unable to provide any updated information about O'Dean's current drug use.  Given the likelihood of limited, if any, meaningful supervision of Witter under the current conditions, even with location monitoring, the court is particularly concerned that an order of immediate release may actually be heightening Witter's risk of death, rather than reducing it.

Without underestimating the risks Witter would face should be become infected with COVID-19, at this point, the court cannot confidently weigh the risks Witter faces inside FMC Carswell against those she would face on supervised release in Colorado. Accordingly, the court will set this mater for an evidentiary hearing on Wednesday April 29, 2020, at 2:00 p.m.

ORDER

IT IS ORDERED that:  the court RESERVES on defendant Rita Witter's motion

for compassionate release (dkt. #174), and will hold an evidentiary hearing by videoconference on Wednesday April 29, 2020, at 2:00 p.m. The parties and any third parties that will participate should contact the clerk's office to coordinate the details of the videoconference.

Entered this 24th day of April, 2020.

                                                BY THE COURT:

                                                /s/

                                                WILLIAM M. CONLEY
                                                District Judge